## Tuttle *v.* Russell.

In the Court below,

URIAH TUTTLE jun. *Plaintiff*; AMOS I. RUSSELL, *Defendant.*

THIS was an action of slander.

In the course of the trial, it became material to the plaintiff, to prove, that on a certain training-day, he was at a certain place, and saw a certain affray; and the plaintiff accordingly introduced witnesses, who swore to the fact. In order to repel this testimony, the defendant introduced one *James Terrel*, who swore, that he was present, at the time, and place mentioned, and that he did not see the plaintiff there, and that the plaintiff was not there, and did not see the affray. For the purpose of discrediting this witness, the plaintiff then offered to prove, that he (*Terrel*) was so far intoxicated as not to know whether the plaintiff was there, or not; and to shew this, the plaintiff offered evidence of the quantity of spirituous liquors, which *Terrel* had drank in the fore part of the day, and immediately before he went to the place specified. The defendant objected to this evidence; and the Court ruled it out, allowing, however, the plaintiff to prove, that *Terrel* was intoxicated, by direct testimony, or by any acts, or conduct of his, evincing a state of intoxication. A verdict being found for the defendant, the plaintiff filed his bill of exceptions.

*The credit of a witness may be impeached, by shewing, that at the time the facts sworn to took place, he was intoxicated. But the intoxication must be proved by direct evidence, or by the acts and conduct of the witness; not by the quantity of spirituous liquors, which he had previously drank.*

*Edwards*, (of New-Haven,) and *Staples*, for the plaintiff in error.

The question in this case is, whether the plaintiff's testimony, rejected by the Court below, was relevant to prove the incapacity, and in that way, to impeach the witness offered by the defendant. If the evidence offered by the plaintiff, and rejected by the Court, would, in any manner,

1805.

TUTTLE
v.
RUSSELL.

have weakened the evidence of the defendant, it ought to have gone to the jury, that it might have had its weight.

It certainly is no less a dictate of law, than of common sense, that, to enable a jury to judge of the weight they ought to give to the testimony of a witness, they should know his character for truth, his capacity, and his situation at the time the facts took place. If it can be shewn, that at the time the facts took place, the witness offered to prove them was in a fit of the numb-palsy, or under a temporary derangement, it certainly will, in a great measure, if not wholly, destroy the weight of the evidence. And surely, if it can be proved, that the witness was *drunk*, at the time the facts took place, which he undertakes to relate, it ought to go to the jury with his testimony ; as it most manifestly would, in the opinion of every man, take off much from the weight of his testimony. It must, we think, be admitted, that the fact, which we offered to prove, was important and relevant. The only remaining question is, whether the evidence offered by the plaintiff was proper, and relevant, to prove the fact of drunkenness. But can a court say, that evidence to shew, that a man has, within an hour before, drank a quart of rum, is not relevant to prove, that the man is drunk. It seems to us not only relevant testimony ; but is that testimony, which goes most directly to the object, and from which, according to the uniform experience of mankind, we should infer, that the man was drunk. It is barely possible, that the consequence of a man's drinking a quart of rum may not be drunkenness ; but generally, it is not only a highly probable, but a certain consequence.— Courts and juries, in weighing evidence, are to calculate on *probabilities*, not *possibilities*. It certainly would not be going great lengths, nor contradicting law, to let a jury presume a man drunk, or less capable of observing and remembering facts, after having drank a quart of rum.

It is admitted, that we might have asked the witness, if the defendant's witness was not drunk. This was so deci-

ded by the Court. Suppose we had asked the witness the question, and he had said the witness was drunk.—Suppose the question had then been asked how he knew, and the answer had been, because the man staggered, and fell down. Might not the question then have been asked, how the witness knew the cause of the person's staggering and falling ; whether it was not owing to a fit ? And might not the witness have answered, that he knew it was not owing to a fit, but to drunkenness ; and might he not then have told the jury, that he knew it was owing to drunkenness, because he saw the man just before drink a pint of rum ?

But it is objected, that the Court ruled, that we might prove, that the witness was actually drunk, by asking the question *directly*, and how he *acted*. We answer, that the opinion of the Court below, as well as the opinion suggested by this objection, is contrary to all sound principles relative to the admission of evidence. If you ask the witness the question *directly*, whether the person was not drunk, you seek an answer which is mere matter of *opinion*, and not the declaration of a fact. The *opinions* of witnesses are not to go to a jury ; but the *facts*, which have given birth to those opinions ; and the jury, upon such facts, are to form their own opinion. Whether a person be drunk or not, is a mere matter of opinion to be formed from observing certain facts, such as the actions of the persons, the quantity and quality of liquor drank. These facts ought, according to every rule of law, to be proved to a jury ; and *they* are then to form their own opinion.

But the Court ruled, that we might prove how the witness *acted*. How the witness acted is but one of the facts, from which we are to infer, that the witness was drunk.— Whether certain actions evince intoxication, or disease, can be known only from being connected with the cause. To know to which of two or more assignable causes to attribute the action, we must know the previous condition

1805.

TUTTLE
*v.*
RUSSELL.

of the person. We think no proposition is more clearly proved by deduction than this.

If the Court let the witness say, that such a person was drunk, and he knows it from having observed his actions, why may not the witness also add, because he saw him drink? If he may assign any of the facts as a reason for his opinion, why may not he assign all the facts which induced him to form the opinion?

We are, however, not obliged to go this length, nor compelled to take such grounds. If it be admitted, that a man, when drunk, is less capable of observing and remembering facts, than when sober; and if the jury might, from seeing a man drink a quart of rum, and seeing him soon after act strangely, infer, that he was drunk; then the liquor drank, quantity and quality of it, together with the actions of the person, ought to have been proved before the Court and jury; because the jury might from these circumstances have inferred legally, that the man was drunk.

*Daggett,* and *Baldwin,* for the defendant.

The only objection taken to the judgment of the Superior Court, in this case, is, that the plaintiff was not permitted to prove the quantity of liquor drank by a certain witness, who testified for the defendant. It was admitted, by the Superior Court, that the testimony would be proper to shew, that the witness, at the time the facts occurred, about which he testified, was intoxicated, and therefore not a competent judge. The plaintiff was not content with this rule, but insisted, that he ought to be permitted to shew the quantity of ardent spirit which the witness had drank. We contend, that such testimony was improper, and therefore legally rejected. It tends to endless inquiries,—such as the strength of the spirit,—the capacity of the witness to bear any great quantity,—his bodily health,—and the accuracy of his mind when more or less intoxicated. It is,

also, uncertain testimony ; as it cannot be inferred that any quantity of spirit would operate for any *given* time.

It is, also, a new objection, unknown to our law books. The grounds assumed might do much mischief, and the end proposed is neither safe, nor useful.

BY THE COURT, unanimously,

The judgment was affirmed.

## Gardner *v.* Preston.

In the Court below,

WILLIAM GARDNER, *Plaintiff*; NATHAN PRESTON, DAVID TALMAN, GARWOOD H. CUNNINGHAM, and GARRY BA-CON, *Defendants*.

1805.

TUTTLE
*v.*
RUSSELL.

| 2d | 205 |
| 69 | 729 |

THIS was an action on the case, founded on a fraudulent combination. The declaration stated, that on the 20th of March, 1803, the defendants, then all residing in this state, combined and conspired to defraud such merchants and traders in Boston, as they might be able to deceive, by their arts and practices. The plaintiff was, at that time, a Boston merchant. The particular scheme agreed upon, by the defendants, was, that *Talman* and *Bacon* should immediately go to Boston, and that *Talman* should give out to the merchants there, that he wished to purchase a great quantity of goods, and that he was a man of large property, and safely to be trusted. To make this representation believed, he was also to give out, that he expected " *Judge Preston*," (meaning one of the defendants) to be shortly there, with a large sum

*In an action against A B. and C. for a conspiracy among themselves, to defraud such merchants and traders as they should be able to impose upon, by representing A. who was a bankrupt, as a man of large property, and safely to be trusted; evidence*

that the defendants made such representations to other persons than the plaintiff, in consequence of which, such persons, without the request of the defendants, recommended A. to the plaintiff, whereby the plaintiff was induced to give him credit, is admissible.