The opinion of the court was delivered by
Gibson, J.
Between the ease as now presented and the report of it on a former occasion in 7 Serg. & Rawle, 345, there is no dif *284 érence in the facts material to the points in controversy, except that it appears the deed from Haslet to Elisabeth M‘ Ilvaine, as well as his deed to Brotherton, contains a covenant of general warranty; and it does not appear at what time the bond from Mrs. 3I‘Ilvaine to Haslet, was delivered by him to Brotherton.
Mary Haslet the widow of the grantor, who has an interest in his estate under the statute of distribution, was called as a witness on the part of the plaintiff below, and objected to on the ground of interest; and it is contended here that by facilitating a recovery in this action, she conduced to release her husband’s estate from the covenant of warranty to the plaintiff. But by the recovery, the estate is on the other hand, subjected to the covenant of Brother-ton: so that whatever interest she had was exactly in equilibrio, and the court was therefore right in not suffering the objection to prevail.
The first time this cause was before us, it was held that the plaintiff was not entitled to recover without proof of having paid the purchase money for which the bond was given; and to prove that fact he proposed to examine Mary Haslet, the witness just mentioned, with respect to her having heard Mrs. MiIlvaine, in conversation with Haslet respecting a settlement of their accounts, previous to the year 1817, assert that she had over paid him; and also to examine her as to his reply. This was objected to, but the court allowed the questions to be put. Had it appeared that Has-lets’ interest in the bond had been vested in Brotherton by assignment or even by delivery before this conversation, the evidence would have been incompetent; for nothing is more clear than that Haslet under that state of the facts could not by any act of his, have prejudiced the interest of Brotherton. But while he continued to be the owner of the security for the unpaid purchase mdney the equity which prevented Mrs. MlIlvaine, or those claiming under her, from calling for the possession, was personal to himself; although his grantee might avail himself of it to show that the plaintiff was not entitled to the possession against Haslet himself, and consequently those claiming under him. It is therefore immaterial that the declarations were made after Haslet had conveyed the land to Brotherton. The bond would not necessarily pass along with the land; and the equity which arose entirely from the non-payment of the purchase money lay with the person who was entitled to receive. He might therefore give an acquittance of the debt or extinguish the equity in any way he should think proper. Brotherton could not insist that Haslet- should be satisfied with nothing less than actual payment of the whole sum; nor shelter himself under Haslet’s wing longer than the latter might choose to permit; and when Haslet thought proper to say he was satisfied the equity which protected Brotherton was at an end. All that the plaintiff had to do, therefore, was to show that Haslet was satisfied; and, surely, to do this Haslets own declarations were competent. *285 It would as I have said, be otherwise with respect to declarations of the obligee after he had ceased to be the owner of the bond, for the equity arising from the ownership of the debt having passed from him, would be no longer subject to his controul. But here it did not appear that Brotherton at the time when the declarations are said to have been made, had become the legal or equitable owner of the bond; but if that were even doubtful the court might might properly receive such evidence, submitting to the jury to determine that fact, and directing them to give to the evidence its appropriate effect or to disregard it altogether, as the event should turn out.
The defendants having given in evidence the record of a verdict and judgment against Mrs. MiIlvaine in an ejectment between her and one Hostler, for the land in question, the plaintiff was permitted to show that on the trial of that issue the evidence as given in this .cause was neither known nor produced. This had a direct tendency to take off the effect of the verdict, and it is difficult to find any thing like a plausible objection against its competency.
The defendants offered to give in evidence the general character of the witness Mary Haslet, for drunkenness. This the court refused to permit, stating at the same time that her character for veracity might be impeached. In supported of the evidence it is said that intemperance may not only impair the memory but weaken the perception of truth in the moral faculties, of the mind. It often does so. But the question is not whether intemperance may not be given in evidence, but whether it must be proved by direct evidence of the fact itself or only by evidence of general reputation of the fact. That kind of depravity which renders aman unworthy of belief, and which is proved not by particular instances, but by general reputation is of a moral kind, and is evinced by a variety of acts and by a long course of general bad conduct, the particular instances of which if they were not inadmissible for other reasons, could not in the nature of things be expected to be treasured up in the recollection of witnesses and spoken of in detail to enable a jury to draw their own conclusions; and therefore an inference of moral destitution drawn from this source by the public at large, which is nothing else than general reputation, is not secondary but the best evidence of the fact, of which the nature of the case is susceptible. But the causes of physical depravity of the mental faculties are susceptible of a particular description by those who have witnessed them, and are to be proved by the ordinary evidence of any other fact, leaving the jury to judge for themselves of their consequences and the extent of their operations. No one will pretend that general reputation of a witness having been attacked by paralysis, which in every instance, perhaps, impairs the memory in a greater or less degree, would be competent; although direct evidence might undoubtedly be given of it by a witness who of his own knowledge could speak to the fact. When *286 intemperance has led as it sometimes does to a destitution of moral principles, and which in turn has led to a course of conduct inconsistent with all honesty and integrity, the character of a witness thus actually formed may be proved by general reputation, as in any other case without regard to the cause which produced it. That is one thing; but proof by general reputation of the existence of causes that might or might not lead to such a result is another. Here the offer was not to prove the fact of intemperance by direct evidence; but to show the general character of the witness as to drunkenness; and I am clearly of opinion that such evidence was inadmissible.
Judgment affirmed.