# Caldwell *against* Gamble.

When two claim title to personal property under the same person, the acts and declarations of that person, or others in his presence, while he was the owner, are evidence against him and all who claim under him. A receipt in writing given by such person for the price of such personal property *sold by him* is admissible in evidence.

ERROR to the common pleas of *Lycoming* county.

This was an action of replevin for thirty-six head of cattle, by John A. Gamble and John Pfouts against James D. Caldwell. The only questions of law which arose in this court are made sufficiently explicit by the statement of facts contained in the opinion of the court.

*Parsons* and *Bancroft,* for plaintiff in error.
*Armstrong* and *Campbell,* contra.

The opinion of the Court was delivered by

ROGERS, J.—This is an action of replevin brought by Gamble and Pfouts against Caldwell, for thirty-six head of cattle. The defendant pleads property ; and on this issue the parties went to trial. Under this plea the defendant gave in evidence a judgment to the May term 1831, James A. Caldwell against Brewster Freeman on a *fieri facias, alias,* and *pluries fieri facias.* The *pluries fieri facias* was issued the 10th of September 1832, and was placed in the hands of the sheriff at half-after ten o'clock of the same day. On this *fieri facias* the sheriff returns, Levied on thirty-two head of cattle in the possession of John Pfouts, also one yoke of working cattle in the possession of Arnold Custard, the 11th of September 1832. This property was sold in pursuance of the levy, as the property of the defendants in the execution ; and the defendant in this suit became the purchaser. The facts appear to be these : on the 23d of August 1832 Brewster Freeman entered into an agreement with Pfouts and Gamble, in which he agrees to deliver to them from twenty-five to forty head of cattle within twenty-five days from the date, for which Gamble and Pfouts agree to pay him, in three months from the time of delivery, 3½ cents per pound to be paid for beef, hide and tallow. To carry this contract into effect, he offered to purchase twenty-five head of a man of the name of Redman Place, stating to him that he made this contract for the sale and delivery of the cattle, and promising to pay Place after he had received payment for the cattle. Place, however, refused to part with his cattle on these terms, and it was agreed between them that Place should accompany Freeman, and that the

twenty head of cattle, together with others which Freeman should buy on the road, should be pledged and continued in the possession of Place until he, Place, should be paid for the cattle sold by him to Freeman. Pfouts and Gamble were informed of this agreement, and with a full knowledge of and assent to it, the cattle were turned into the field of Pfouts for safe custody and pasturage. This was on the morning of Saturday the 8th of September. The evening of the same day, between nine and ten o'clock, Place testifies that he received his money for the cattle from Freeman. From this time, therefore, the cattle became the absolute property of Freeman, and he was at liberty to carry into effect the agreement of the 23d of August, between himself and Pfouts and Gamble. The great point in dispute is, admitting the agreement as above stated, whether Freeman delivered the cattle, in pursuance of the agreement to Pfouts and Gamble, before half-after ten o'clock of Monday the 10th of September, when the *fieri facias* went into the hands of the sheriff. It must be remarked that both parties claim under Freeman : of course his declarations and acts, or the declarations of others in his presence, are evidence against him and all persons who claim under him. The evidence which forms the first bill of exceptions was properly received. The evidence which was received by the court, of which the defendant complains, contains the declarations of Freeman, and of Pfouts and Place in his presence, which tend to show the nature of the transactions between the parties on Saturday, before Caldwell, who claims under Freeman, had any interest in the property. Thus in Brindle and another *v.* M'Ilvaine, 10 *Serg. & Rawle* 282, the declarations of an obligee of a bond, before assignment, as to his being paid the amount, are evidence in a suit to recover land in consideration of which the bond was given, brought against one holding the land by deed from the obligee of the bond, and still holding the bond also by assignment. The same principle is also decided in Morton for the use of M'Glaughlin *v.* Morton, 13 *Serg. & Rawle* 107. The distinction is taken between declarations before, and after, the interest has been divested. If made before, they are evidence against all who claim under him. The same principle we also think applies to the evidence contained in the second bill. The plaintiff offered a receipt in evidence in the following words :

"$381.   Received September 8th, 1832, of Pfouts and Gamble, three hundred and eighty-one dollars, on account of thirty-six head of cattle.

"BREWSTER FREEMAN."

This receipt was offered as a written declaration by Freeman, that he received that sum in part payment for the cattle, which, by his agreement, he was to deliver to Pfouts and Gamble. It cannot be doubted that the evidence of part payment was pertinent to the issue. It was powerful evidence to show that the parties had concluded the contract at the time the payment was made ; and on the same principle as before stated, it should be received. The objec-

[Caldwell v. Gamble.]

tion, however, is, that there is no proof, except what appears on the face of the receipt itself, that it was given on the 8th of September, and before the title of Caldwell accrued on his execution. It is not denied that if the time appeared by other testimony, it was proper evidence for the jury. About this point we have had some difficulty. We have, however, come to this conclusion : that the presumption is, that it was fairly done, as the law never presumes fraud ; and that the receipt should be received, with proper directions from the court, that if manufactured by the parties it should be entitled to no weight. It is a transaction in the usual course of business, as it is well known that receipts for the payment of money are frequently given without witnesses of the payment.

The plaintiff in error has also taken two objections to the charge, but these in the argument have been abandoned.

Judgment affirmed.