Robert Hopkins, by his will in 1807, bequeathed the mother of this slave to his daughter, Nancy Short, wife of Wingate Short, for life; and to her daughters, Betsy and Sally, after her death. Joshua *Page 340 
Phillips married Betsy, one of these daughters; and Colonel Waples was the assignee of James Truitt, who married Sally, the other daughter. On the marriage of Wingate Short with Nancy Hopkins, several years before the death of her father, Bet, the mother of Jerry, then a little girl, went into the family of Wingate Short, and remained there, with some short exceptions, all the time until Robert Hopkins' death.
The defence was, that Hopkins in his lifetime made an absolute gift of Bet to his daughter, Mrs. Short. Wingate Short, by his will made in 1818, bequeathed Jerry to his wife for life, and after her death to his son, Leonard Short, the defendant. Nancy Short is now dead.
To show the interest of one of the plaintiffs, a bill of sale was produced from James Truitt to William D. Waples for one-half of Bet and her issue, in consideration of $500, acknowledged to be paid. The paper was under seal and proved by the subscribing witness. He was asked whether the consideration was paid absolutely or only on condition of recovery of the negroes. This was objected to and ruled out. The objection was that it went to contradict the paper. Roscoe Evid.
11, 9; 3 Stark. 1000, 1, 2. It was not urged that this proof was admissible on the ground of fraud. Doubtless an instrumentary witness could prove fraud and thus invalidate the instrument in any proceeding where it was in issue; but that was not the case here. The defendant was no party to the hill of sale, and if it could be shown to be fraudulent as between Truitt and Waples, it would be totally irrelevant to any issue in this cause.
Levin Hopkins, the son and executor of Robert Hopkins, was called by the defendants to prove, that many years previous to the death of Robert, Bet went into the possession of Wingate Short, and was recognized as his property. This was objected to.
Frame. — This witness is the executor of Robert Hopkins. He is called to disprove the title of his testator in this property, which he was bound to take into the estate and account for. His testimony goes to discharge that liability. He is bound by the law to execute the will — has taken upon himself the burden and trust of its execution; he is now brought forward to defeat that will, to destroy its effect, to violate his trust. He is not competent to do so.
Rogers. — The witness has no interest in the event of this suit; cannot gain or lose any thing by the result. The verdict could not possibly be given in evidence in any suit for or against him, personally or as executor. Thirty-one years ago the witness became the executor *Page 341 
of his father. How can he, after such a lapse of time, be made responsible by any result of this suit? The matters inquired of are facts within the knowledge of the witness before the will was made; and if it devolved any duty on him in relation to this property, the act of Robert Hopkins could not affect this knowledge or deprive another of the benefit of his testimony. But it is a matter of no sort of consequence to the executor whether this property goes under the will of Robert Hopkins to the children of Nancy Short, Betsy and Sally; or under the will of Wingate Short, to his son Leonard. It was enough for him as executor that the girl went to Nancy Short, to whom she was bequeathed in the will which he was bound to execute.
Ridgely. — The ground we take is, that Robert Hopkins himself could not have controverted the title to property which he has bequeathed as belonging to him; neither can his representative, his executor who is to execute the will.
Evidence admitted. The witness has no interest. The property in either case went into the possession of Nancy Short according to the will. Nancy Short was the devisee for life under both wills; but if the facts to be proved would go to establish a title to the property prior to the will, and these are facts which were known to the witness before that time, the act of Robert Hopkins in making him executor could not deprive any one having an interest in this testimony of the use of it.
The defendants also offered in evidence the inventory of the personal estate of Wingate Short, filed by his executor before the register. It was objected to as being res inter alios acta, or at least ex parte.
Per Curiam. — All inventories are ex parte, and therefore not conclusive. But it is a record, and any one having an interest in such record may use it as such. It is not doubted that the plaintiff might use it, at least to show the executor's consent to the will. The will being admitted, the inventory follows as a part of the administration of the estate. Its relevancy to the case is not at present so apparent, but we will not, therefore, rule it out, as the party producing it asserts its relevancy. The inventory will neither prove nor disprove title in the testator. It may show the executor's assent, and the transmission to the devisees under the will of whatever title the testator had.
The assessment of the property of Wingate Short was offered in evidence to show title to Bet; and rejected on the authority ofGriffith vs. Johnson, I Harr. 136.
A witness was called to impeach the testimony of Levin Hopkins, *Page 342 
on the ground that his mind had been affected for a number of years with a degree of imbecility to the extent almost of insanity. This was objected to.
Ridgely. — The object is not to impeach the veracity of this witness, but to show that for a long space of time his mind was so much impaired by disease, that his recollection and memory could not be relied on. Suppose the case of an insane person offered as a witness. Would it not be competent to show his insanity by evidence? And if so, can't we show that this witness's mind was of such a character as that his recollection can't be relied on.
Rogers. — This is a novel experiment; to test a man's credibility by the strength of his intellect. It is not pretended that he is insane, or imbecile; but only that he has been sick and diseased in body and mind so as to weaken his intellect. I agree that an insane person can't be a competent witness, but the objection would apply to the time of offering the witness. Drunkenness impairs the intellect; but can you prove that a witness is addicted to this habit, and degrade him to render him incompetent. Such questions would raise a collateral issue; one on which there is more contrariety of opinion than any other — the strength of a man's mind.
By the Court. — The credibility of a witness may be impeached by attacking his character. His competency may be attacked by showing him to be insane or non compos mentis. It is now proposed to show that in an interval between the time when the facts to which this witness testifies occurred, and this time, he has had an attack of insanity — admitting that both then and now he was and is sane; and the object is avowed to be to impeach his credibility by showing that his mind has been so impaired by disease and temporary insanity as that his memory cannot now be relied on. We think this cannot be done. It is an inquiry into the present strength of a witness's mind and memory; an inquiry as to what extent disease and temporary insanity have affected his mind; an inquiry too wide, loose and uncertain, to be admitted. On the same principle we should admit an inquiry into a witness's habits of intemperance or other causes affecting, though temporarily, his mind and reason. If the question be confined to the period to which the witness's testimony applies, it may be admissible to discredit him entirely; because if he is shown to have been insane at the time, this makes it absolutely certain that he could not have known the facts of which he speaks. It introduces no nice question of the extent of a man's intellect, or tenacity of his memory, but it flatly contradicts him. It shows that he never knew that which he swears he remembers. So the credit of a witness may be impeached by showing that he was intoxicated *Page 343 
at the time the transaction happened about which he testifies. (Tuttle
vs. Russell, 2 Day, 201; Swift Ev. 144; 1Stark. Ev. 147, n.) But it is not competent to show that a witness has been drunk half his life between the period of which he speaks and the time of his giving testimony, in order to show that his memory has been impaired by such habits. If the question, therefore, is confined to the period of which the witness spoke, before the death of his father, we are inclined to admit it; but we think it is not competent to impeach his credit by showing an attack of insanity in the interval.
 Testimony rejected; and exception taken.
The case finally rested on questions of fact, which were left to the jury, and the verdict went for the plaintiffs.