Scott, J. The main question we are to examine in this case relates to the sufficiency of the evidence adduced to show such part payment within the period of limitation of the debt sued as to take the case without the operation of the statute. It has been often much regretted, by learned jurists, especially within the last twenty years, that the plain letter of the statute of limitations was ever departed from. For sometime after the passage of the statute of 21st James, the courts seem to have had an improper conception of its true character, and, during this period, the tendency of judicial decisions touching its provisions (many of which were rife with subtle distinctions and prolific of law suits) was rapidly to its virtual repeal. But experience has tested its efficiency for the suppression of fraud in quarters where no other instrumentality had ever reached it, and shown its decided general tendency to discountenance and diminish litigation, and to achieve the substantial ends of justice. When administered in its true spirit, more liberal views began to prevail, and although the courts now made manifest efforts to recover the lost ground, the rule “stare decisis” rendered it utterly impossible to do more than modify doctrines that had been too hastily established and promulged under mistaken views of the true character and value of the statute. This state of things produced the statute of 9th George 4th, chap. 14, generally known as “Lord Tenterdon’s Act,” nearly all the provisions of which are found in our own. This act, among its numerous othervaluable provisions, by requiring a different mode of proof to establish some of the numerous implied promises which these doctrines had recognized as sufficient to take a case without the influence of the statute, suppressed much of the mischief that had sprung from the doctrines that those adjudications had, established and it is to be regretted that any substantial portion of the third section of that act was omitted in ours, which seems the more remarkable from the numerous provisions, throughout the whole body of our statutory laws, placing, for many purposes, sealed and unsealed instruments of writing on a footing of entire equality. Previous to the passage of this act, the English courts had ultimately arrived at the conclusion, under the more liberal views that they had gradually been induced to adopt, that, “ in addition to the admission of a present subsisting debt, there must be either an express promise to pay, or circumstances from which an implied promise might be fairly presumed.” Moore vs. The Bank of Columbia, 6 Peters, 8. And it was soon after settled that the office of this act upon this point was not to alter the legal construction to be put upon acknowledgments or promises made by the defendant, but merely to require a different mode of proof, substituting the certain evidence of a writing signed by the party chargeable instead of the uncertain and precarious testimony to be derived from the memory of witnesses, (Chitty on Contracts, 818, 819,) and in this respect, to the extent that that, as well as our own statute, goes, it cuts off peremptorily parol evidence in rendering it totally incompetent. The American courts, for the most part, regarding these statutes emphatically as statutes of peace and repose, and discarding, in a great degree, the mere prejudices of the earlier years of their existence, which the English courts had seemed to entertain, and acting more upon the motto, “that the law was created for the watchful, and not the negligent,” and considering it as the part of sound public policy to discountenance those who permit the remedies for their rights to be postponed by their unreasonable forbearance, have in general administered these laws in a spirit of fairness and liberality, and in many instances discountenanced technical and narrow views which had, in earlier times, found favor in the English courts. They have not, however, refused to administer substantially the law as it was 'transmitted to them, although, as has been already remarked, they ]have not been insensible that much of it has been derived from departures from the letter of the statute, which the most enlightened jurists of the present day, with more liberal views of just public policy and enlarged experience, have not altogether approved. The doctrine that part payment of a debt revives the claim as to the residue, is a part of the law so derived, and has been expressly recognized by this court in the case of The Trustees of R. E. Bank vs. Hartford et al., 5 Ark. 551. This doctrine proceeds upon the ground that part payment is precisely equivalent to an admission that, at the time of payment, the debt is due, and upon that admission the law implies a promise to pay, which it regards as equivalent to an express promise, on the supposition that money is not usually paid and appropriated without deliberation. All these implications and presumptions arise from the fact of actual part payment, and until there be actual part payment of the particular debt to be reviyed, none of these implications and presumptions can arise. So, if a debt is sought to be revived, not by part payment, but by a written acknowledgment of that debt, that must be “ an express acknowledgment of the debt as a debt due at that time,” or it must be an “ express written promise to pay it,” which latter necessarily presupposes such an acknowledgment. Davidson vs. Morris, 5 Smedes & Marshall, 571: —the revival both in the one and the other mode standing in principle upon the same foundation, that is to say, upon an acknowledgment of a subsisting debt under circumstances from which an implied promise may be fairly presumed. The proof of such acknowledgment, under such 'circumstances, is a different question, and the made of proof or grade of evidence in the one case is not the same as in the other. In the one case, written evidence is indispensable: in the other, parol evidence is allowed; in the one case, an actual acknowledgment, under circumstances from which a promise may be fairly implied, is to be proven by written testimony: in the other, an actual payment is to be proven, from which fact the law presumes an acknowledgment and promise, as to the residue, from the circumstance that a part of a particular entire debt has been paid. In the one case, the express acknowledgment, so proven, is the foundation of the legal implication: in the other, the actual part payment. By each the same result is achieved from like foundations. In either case, the main fact to be proven is the “ continued existence of the debt, notwithstanding the lapse of time since its creation was such as either to raise a presumption of payment, orto bring the case within the operation of the statute of limitations.” 1 Green-leaf’s Ev. s. 121. “This fact is sought to be proven by the acknowledgment of the debtor himself, and this acknowledgment to be proved by his having actually paid part of the money.” Ib. When such part payment is sought to be proven by a credit endorsed on the back of a security, (and in cases where such endorsement is admissible at all as evidence,) it is the actual part payment so sought to be proven that has the effect to revive the debt, not the endorsement: that has no such effect, it being but evidence to be considered by the jury among the circumstances showing an actual part payment. 2 Greenl. Ev., s. 444. But such endorsement, when made by the plaintiff, or in his behalf, can never be admissible on his part unless it be first proven, by evidence aliunde, to have been actually made before the cause of action was barred by the statute, and. consequently against the interest of the party making it, and to this effect are all the American authorities and most of the English. It is true that some of the English cases, of a date not long after the statute 21st Jac., when the strongest prejudices against this statute seem to have obtained, are to the express, but most of this class only to the seeming, purport that the date of the making of the endorsement will be inferred from its face in the absence of opposing circumstances, and that, “ if there is no evidence to the contrary, the presumption is that the endorsement was made at the time it purports to bear date, and the burthen of proving the date to be false lies on the other party.” (See Greenl. Ev., s. 121, and the cases there cited.) But all such decisions, except perhaps one or two, will be found, on examination, to be reconcilable with the law, in this, that such endorsements were generally in these cases offered in evidence not by the plaintiff, but by the party defendant, or by third persons, and, therefore, in some of these cases, were admissible evidence, not only because against the interest of the party making' them, but because they were original evidence of a verbal contemporaneous act linked in a chain of events, and they were thus a part of the res gestee< And of such of the English cases as cannot be so reconciled with the law, Lord Ellenbokough, in the case of Rose ad. vs. Bryant, 3 Campbell R. 321, makes the following remarks: “I have been at a loss to see the principle on which these receipts in the handwriting of the creditor have sometimes been admitted as evidence against the debtor, and I am of the opinion they cannot be properly admitted unless they are first proved to have been written at a time when the effect of them was clearly in contradiction to the writer’s interest.” And these views of Lord Ellenborough are fully sustained by the subsequent cases of Sinclair vs. Baggarly, decided in the Exchequer in 1838, 4 Meeson & Webby’s R. 318, afterwards approved in Anderson vs. Weston, 6 Bingham’s New Cases, 296] in Caldwell vs. Gamble, 4 Watts, 292, and in Greiner’s Cases, 5 W. & S. 331: and, of American authorities, in Roseboon vs. Biblington, 17 Johnson R. 182, it was held that “ an endorsement on a bond or note, made by the obligee or promisee, without the privity of the debtor, cannot be admitted as evidence of payment in favor of the party making such endorsement, unless it be first shown that it was made at a timé when its operation would be against the interest of the party making it.” And to the same express purport are the cases, decided by the supreme court of Alabama, of McGeehee vs. Green, 6 Porter, 537; Watson vs. Dale, 1 Porter, 250, and Skelton vs. Skelton, previously decided by that court: and the cases of South Carolina, of Gibson vs. Peebles, 2 McCord, 418, and Concklin vs. Pearson, 1 Richardson R. 392: and in Georgia, of West vs. Johnson, Georgia Decisions, part 1, p. 72, and various other American authorities. To establish such part payment as will defeat the operation of the statute of limitations, it is indispensable that it be shown that the payment “ was expressly made and appropriated by the debtor on account of the debt which would be otherwise barred by the statute, and, therefore, if the creditor has two separate demands against his debtor, one barred by the statute and the other not, and the debtor make a payment without specially appropriating it to either demand, though the creditor may, in the exercise of his ordinary right of appropriation, apply it in part liquidation of the older demand, he cannot make it operate as a part payment under the statute so as to revive a remedy for the remainder of such old demand.” Chitty on Contracts, 831, 832. This principle of appropriation necessarily results from the foundation upon which the doctrine of part payment rests, for unless there be not only a part payment, but an actual part payment, of the particular debt sought to be revived by the appropriation of the payment of that specific debt, not by the creditor, but by the debtor, no presumption of recognition and acknowledgment' of the stale debt can by possibility arise. And of course the fact of appropriation by the creditor has to be proven like any other fact, and the burthen of doing so lies upon the party setting up the part payment. In the case before us, the evidence adduced on the trial below, as the bill of exceptions presents it, (and that professes to set out all the evidence adduced,) was clearly inadmissible; but, as the question of competency was not raised and saved in that court, it cannot be considered by us, as has been frequently ruled here, and we have but to look at its weight and sufficiency to support' the verdict and judgment, and, regarding it in this aspect alone, we are entirely satisfied that it was altogether insufficient, and had no weight at all, as it laid the foundation for no inference whatever against the defendant, on the issue joined, unaccompanied, as it was, with the proof of facts and circumstances which, if proven, would have given it weight: and therefore, in overruling the motion for a new trial, the court below erred; but as this case has again to go before a jury, we designedly abstain from any further remark upon the testimony. There was also manifest error in the court’s proceeding to judgment without first discontinuing the action as to the defendants wbo bad not been served witb process. Davis vs. Tierson, 2 Haw. Miss. Rep. 786. Dennison vs. Lewis, 6 How. Miss. Rep. 517. For these errors, the judgment below must be reversed, and the cause remanded to be proceeded in.