Day, J.
The deposition of Margaret Hunter was given in evidence without objection. Her competency as a witness was not questioned. No attempt was made to prove that she was of unsound' mind. The question presented by the record is, whether the credibility of a competent witness may be ^impeached by general' evidence that the -witness is not j>ossessed of ordinary intelligence or powers of mind.
It would not only be novel in practice, but would be entirely impracticable, to permit the parties, on the trial of a case,'to go into general proof as to the strength of the mental capacity of the several witnesses. It might load to as many collateral issues as there are witnesses, and thus divert the minds of the triers from the substantial issues of the case. Litigation would become more uncertain and interminable than ever. Moreover, if it be conceded that the credibility of a witness is to be graded in proportion to his strength of intellect, the tribunal before which he testifies can better estimate his capacity, and the weight to which his testimony is entitled, by his manner, and by his statements on cross-examination, than can ordinarily be done by the testimony and conflicting opinions of other witnesses, as to the extent of his mental powers, or tho degree of his intelligence.
But neither the veracity nor credit of a witness is necessarily impeached by proving that he is possessed of a weak intellect. Although such a witness may be easily imposed upon by a crafty party, or his observation may be less accurate and his memory less reliable than that of a person of strong powers of mind, he may still be credible; and the degree of credit to which he is entitled in the testimony given, can not be, practically, bettor ascertained than by the usual tests, without resort to other proof of his capacity.
The admission of this kind of evidence is not warranted by the general, rule in relation to impeaching tho credibility of witnesses. In the case of Bucklin v. The State (20 Ohio, 22), the rule is quoted from 1 Phillip’s Ev. 291, as follows: "The party against whom a witness-is called may disprove tho facts proved by him, or may examine' other witnesses as to his general character. To impeach tho credit' of a witness, you can only examine to his general character, and not to particular facts. And the reason given is that every man is supposed to be capable of supporting his general character; but is not supposed capable of supporting his character as to par *44 ticular facts.” In 1 Greenl. Ev., sec. 461, the same statement of the rule is made.
* Although in some of the states full latitude is given to prove the general character of the witness, in this the evidence is “ restricted to his reputation for for truth and veracity.” Craig v. The State, 5 Ohio St. 605. It is difficult to see why the reasons for this restriction of the rule do not apply to exclude the evidence given in this case.
In the case of Hoit v. Moulton, 1 Foster N. H. 586, it was sought to discredit a witness by proof that “ he was a common drunkard,” but the proof was rejected, and the court say: “In attempting to impeach the character of a witness for veracity, the inquiries must be confined solely to his general reputation for truth. Any other course would lead to the multiplication of numerous collateral issues, which parties would not be prepared to meet, and could not be required to meet without notice, and litigation would be almost interminable.”
In Thayer v. Boyle, 30 Maine, 475, it is said in the opinion: “ The evidence offered of the intemperate habits of one of the plaintiff’s witnesses was properly excluded. Evidence of this kind has never been held competent here, where the impeachment of the character of a witness has been confined to his general reputation for truth.” The rule is the same as to any kind of immorality that may affect the credit of a witness. 2 Phil. Ev. 950; C. & H., note 596.
It is said there is a distinction between the mode of attacking the general credit of a witness and his credit in the particular cause. 2 Phil. Ev. 950, note ante. Hence, it has been held competent to prove that the witness, at the time of the transaction about which he testifies, was disabled from knowing about the matters of which he has spoken—as that he was drunk, paralyzed, deaf, or the like. Tuttle v. Russell, 2 Day, 201; Fleming v. The State, 5 Humph. 564; Brindle v. McIlvaine, 10 Serg. & Rawle, 282; McDowell v. Preston, 25 Ga. 528; 2 Phil. Ev. 950, note 596.
But such evidence of a particular fact, is of the nature of contradictory testimony; and it may well be doubted whether, under the rule settled in the case of King v. Wicks, 20 Ohio, 87, the witness should not be first inquired of, upon cross-examinatiion, as to the existence of the disability claimed ^against him. The *45 reason for the rule, and the benefits to bo derived from it, are of equal application to both classes of cases.
In the case of Rivara v. Ghio, 3 E. D. Smith, N. Y. Com. Pl. 264, it was held that the imbecility of a witness might be given in evidence to affect his credibility, and that a former imbecility might be shown, for the reason that it may be presumed to continué, “ and might justly detract from, if it did not altogether destroy, the weight to be given to the evidence of the witness.”
But, in the case of Evans v. Hettich, 7 Wheat. 434, it was held incompetent to prove, for the purpose of attacking the “ credibility of a witness, that he is subject to fits of derangement, if he is sane at the time of giving his testimony.”
In the case of Carpenter v. Dame, 10 Ind. 131, the question whether the weakness of the mental faculties of the witness might be shown to affect his credulity, was made. The court did not deem it necessary to decide the question, but say, however, that the admissibility of the testimony would seem to be inferable from the statute of that state, which enacts that “ any fact which might heretofore be shown to render a witness incompetent, may be hereafter shown to affect his credibility.”
This is much broader than the statute of this state, which renders parties and convicts competent witnesses, but provides that the fact in either case may be shown to affect their credibility. S. & C. Stat. 1035, sec. 310.
But the question in this case is, not whether it was competent to prove that the witness was non compos mentis, or any fact that would “render a witness incompetent,” but to prove that she was “hardly as intelligent as ordinary girls,” though she might fully understand the obligations of an oath, and the matters about which she testified.
To admit this evidence would be going beyond the case of Rivara v, Ghio, before cited, where the rule is, at least, carried to the utmost limit.
We think that the principles which in this state render it incompetent to prove the turpitude of a witness in any respect, *to impeach his veracity or credit, and which limit the proof as to his truth and veracity, to his reputation in that respect, forbid tho admission of the proof complained of, and admitted by the court below.,
*46 This view coincides with the only case that has come to our notice, in which the point was made and determined.
In the case of Goodwin v. Goodwin, 20 Ga. 600, upon this question, it is said in the opinion: “No authority has been produced to justify it, and we know of no practice to sanction the introduction of testimony not to impeach the veracity, but the memory of the witness. It would bo attended with groat inconvenience, and hinder and delay the progress of business, by turning aside to form these collateral issues. Once open the door to this sort of investigation, and it would not bo restricted to the memory, but would apply to any real or supposed deficiency in any other mental faculty. By a cross-examination of the witness himself, the jury, whose province it is, will be enabled to decide, satisfactorily, as to the credit, or weight, rather, to be attached to the testimony.”
It follows that the court of common pleas erred in admitting the evidence complained of, and that the judgment must be reversed, and the case remanded for further proceedings.
Brinkerhoee, C. J., and Scott,White, and Welch, JJ., concurred.